IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HEMEREGILDA MERCADO,

Plaintiff

v.                                                   CIVIL 09-2288 (JA)

COMMISSIONER OF SOCIAL SECURITY,

Defendant

OPINION AND ORDER

On December 28, 2009, plaintiff filed this complaint seeking review of a final decision of the Commissioner of Social Security which denied her application for a period of disability and Social Security disability insurance benefits.   The defendant filed a 23-page memorandum in support of the final decision on August 23, 2010 (Docket No. 13) and plaintiff filed a 28-page memorandum with attachments against such final decision on July 23, 2010.  (Docket No. 10.)

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole.  In order to be entitled to such benefits, plaintiff must establish that she was disabled under the Act at any time on or before December 30, 2007, when she last met the earnings requirements for disability benefits under the Social Security Act.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

CIVIL 09-2288 (JA)                    2

    After evaluating the evidence of record, the administrative law judge entered the following findings on January 7, 2008:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 30, 2007.
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).
> 3. The claimant has the following impairments: hypothyroidism, cervical myositis, peripheral polyneuropathy of the lower extremities and bilateral radiculopathy at the L5(L4) levels by elecrotromyogram and nerve conduction (EMG/NCS) studies, lower back pain, herniated discs at the L4-L5 and L5-S1levels by magnetic resonance imaging (MRI) study, and moderate major depressive disorder (20 CFR 404.1520(c)).
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
> 5. After careful consideration of the entire record, the undersigned finds that, from the physical standpoint, the claimant has the residual functional capacity to perform medium work not requiring frequent climbing, frequent stooping, frequent crouching, exposure to unprotected heights or exposure to moving machinery.  On the other hand, from the mental standpoint, the claimant's major depressive disorder does not preclude following both simple and complex work instructions.
> 6. The claimant is capable of performing past relevant work as sewing machine operator.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2002 through the date of this decision (20 CFR 404.1520(f)).

(Docket No. 16, at 7, 10, 12.)

CIVIL 09-2288 (JA)                           3

Plaintiff has the burden of proving that she has become disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137 (1987).  A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months.  See 42 U.S.C. § 416(i)(1).  In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits.  There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986).  Partial disability does not qualify a claimant for benefits.  See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

The finding of the commissioner reflects an application of step four of the sequential evaluation process.  See 20 C.F.R. § 404.1520(e).  At step four the initial burden is on the claimant to show that she can no longer perform her former work because of her impairment(s).  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); see Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).  Thence, the Commissioner must compare the physical and mental demands of the past work with the current functional capability.   See  20 C.F.R. § 404.1560(b).   At this stage, the

CIVIL 09-2288 (JA)                    4

administrative law judge is entitled to credit a claimant's own description of her former job duties and functional limitations but has some burden independently to develop the record.  See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d at 17; Santiago v. Sec'y of Heath & Human Servs., 944 F.2d at 5-6.

Plaintiff worked from February 1984 until June 2002 as a (sewing machine) operator for Hanes in Camuy, a manufacturer of men's underwear.  (Tr. at 89, 98, 121.)  Plaintiff described her job as sewing leg parts and preparing packages of six dozens.  She sat and crouched eight hours a day and frequently lifted packages that weighed 10 pounds.  (Tr. at 98.)  More specifically, she sat for 7.3 hours a day and stooped for .3 hours a day.  (Tr. at 122, 126.)  She would take bundles of six dozens of underwear and carry them to another operator two feet away.  (Tr. at 126.)

The medical evidence reveals that plaintiff received treatment at the State Insurance Fund up to September 4, 2002.  On September 14, 2001, plaintiff was diagnosed with disc herniations and moderate degenerative disc disease by Dr. Ricardo Olazabal.  (Tr. at 209.)  She continued to receive medical treatment from an endocrinologist up to December 14, 2004, from a physiatrist through July 12, 2005, and from a general practitioner through March 10, 2005.  A consultative neurologist evaluated her on March 5, 2005.

CIVIL 09-2288 (JA)                    5

A general medical report of March 10, 2005 by Dr. Erlando Méndez Morales resulted in a diagnosis of hypothyroidism, major depression with psychotic features, lumbar disc hernia, and radiculopathy.  The prognosis was poor.  There was a notation that plaintiff could not work by any means.  (Tr. at 176.)

Plaintiff was tested by physiatrist Dr. Jorge Padilla Rodríguez on July 12, 2005.  His findings were consistent with bilateral L5 (L4) radiculopathy, sub-acute in nature, and peripheral polyneuropathy involving both motor and sensory fibers, with mainly demyelinating features, most probably secondary to thyroid disease. (Tr. at 157.)

A physical residual functional capacity assessment dated July 13, 2004 by internist Dr. Asciclo A. Marxuach reflected limitations in lifting in that plaintiff could occasionally lift 20 pounds, and frequently lift 10 pounds.  (Tr. at 340.)  There were postural limitations in that plaintiff could occasionally climb, stoop, crouch and crawl.  (Tr. at 341.)  There were no environmental limitations.

A mental residual functional capacity assessment dated September 21, 2004 by clinical psychologist Zulma McDougall López, Ph.D., reflected moderate limitations in sustained concentration and persistence, and in the ability to understand and remember detailed instructions.  There were also moderate limitations in the ability to interact appropriately with the general public, as well as in adaptation.  The clinical psychologist noted that plaintiff suffers from a major

CIVIL 09-2288 (JA)                         6

depression which did not impose at that moment serious restrictions in her functioning.  Plaintiff was determined to be able to remember and carry out instructions, both simple and complex.  (Tr. at 296-98.)  The assessment was affirmed by clinical psychologist Orlando Reboredo, Ph.D.  A psychiatric review technique form reflective affective disorder with depressive syndrome characterized by psychomotor agitation, or decreased energy, or feelings of guilt or worthlessness, or difficulty concentrating or thinking.  (Tr. at 303.)  There were moderate functional limitations in restriction of activities of daily living, difficulties in maintaining social functioning, concentration, persistence or pace.  (Tr. at 310.)

Dr. José R. Gándara Carbonell reported on plaintiff's thyroid on February 15, 2005.  The report is fairly unremarkable and the prognosis was good.  (Tr. at 204.)

A March 3, 2005 neurological evaluation by Dr. Alfredo Pérez Canabal resulted in a diagnostic impression of low back pain and cervical myositis.  (Tr. at 193.)  Plaintiff was found to be alert, active, and oriented in time, place and person.  Due to the pain, plaintiff had to change positions frequently.  X-rays of that date showed straightening of the lower lordosis, possibly due to muscle spasm.  (Tr. at 201.)

A current physical residual functional capacity assessment dated April 8, 2005 by internist Dr. Idalia Pedroza López reflects no significant exertional

CIVIL 09-2288 (JA)                    7

limitations.  There were postural limitations, especially in kneeling, but also in climbing, balancing, stooping, crouching and crawling.  (Tr. at 105.)  In terms of environmental limitations, plaintiff was determined to avoid even moderate exposure to hazards such as machinery and heights.  (Tr. at 167.)

A mental residual functional capacity assessment dated June 27, and signed on July 2, 2007 by  Dr. María de los Ángeles Pujols, reflects that plaintiff was unable to meet competitive standards in many categories such as understanding and remembering very short and simple instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms, and deal with normal work stress.  (Tr. at 133.)  She was found to poorly tolerate the presence of co-workers and to be unprepared to be outside of her home.  (Tr. at 134.)  Her limitations would have her be absent from work more than four days a month.  The doctor found that plaintiff could not tolerate pressures and isolated herself.  She does not finish or perform any house chores and her tolerance to adapt to changes at work was very limited.  (Tr. at 140.)

Plaintiff argues in her memorandum of law that the administrative law judge committed error in determining that she could still perform her work as a sewing machine operator, as was actually and generally performed.  The judge also arguably committed error by not addressing at all her severe painful condition and ensuing limitations, and the implications regarding her capacity for attention and

CIVIL 09-2288 (JA)                        8

concentration which would have a direct impact upon productivity as required in her industry to sustain a job and hold it.  Plaintiff attacks the manner in which the administrative law judge incorrectly determined her physical and mental residual functional capacity, relying on assessments of non-examining physicians, and not giving controlling weight to assessments of treating physicians, and especially sweeping aside the reports and progress notes of the main and only psychiatric treating source.  Plaintiff argues that vocational and medical experts are needed to explain and translate the extensive medical data into functional terms.

The administrative law judge noted that the physical examinations of Dr. Méndez, Dr. Gándara and Dr. Padilla did not reveal signs of muscle atrophy, sensory deficits or reflex abnormalities.  He noted that Dr. Méndez did not state the frequency of treatment or the specific dates.  The administrative law judge noted that the general practitioner did not state the basis for the statement that plaintiff presented reflex and sensory deficits, nor for the conclusion that the plaintiff's functional capacity was markedly restricted.  The administrative law judge noted that there was an absence in the medical records of "swelling, deformities, increased heat or significant limitations in the range of motion of the major joints." (Docket No. 16, at 8.)  The range of motion of the cervical and lumbosacral spine were not markedly restricted and although there was tenderness and there were muscle spasms, these were not significant or

CIVIL 09-2288 (JA)                              9

persistent.   X-rays did not reveal marked degenerative changes.   The administrative law judge emphasized that the consultative neurological examination performed by Dr. Pérez Canabal on March 3, 2005 disclosed an essentially normal neurological system.  Also on that date, Dr. Gándara provided a good prognosis from the endocrinological standpoint.

The administrative law judge also made reference to the treatment of Dr. María de Los Ángeles Pujols, plaintiff's treating psychiatrist, who saw plaintiff roughly every five months from August 5, 2002 through October 28, 2004, according to the progress notes.   The notes reflect plaintiff's allegations of persistent pain.  A questionnaire dated November 21, 2004 is submitted by the psychiatrist as is an evaluation and mental residual functional capacity assessment issued on July 2, 2007, and previously mentioned.   The psychiatrist diagnosed moderate to severe recurrent major depressive disorder.  Dr. Pujols found that plaintiff was unable to meet the competitive standards of simple work but also indicated that plaintiff had the capacity to sustain an ordinary routine without special supervision, work in coordination with others without being unduly distracted and accept instructions and respond appropriately to criticism from supervisors.  The administrative law judge noted that the longitudinal analysis of the record as a whole as interpreted by clinical psychologists from the Disability Determination Program, the State Agency, establishes that the mental condition

CIVIL 09-2288 (JA)                              10

is a major depressive disorder, moderate in intensity.  (Docket No. 16, at 9.)  The

administrative law judge made reference to the mental residual functional capacity

assessment of Dr. Reboredo which he found was supported by the preponderance

of the evidence of record and adopted the same.  The administrative law judge

also found that Dr. Pujols' diagnostic impression is not supported by the

psychiatrist's own findings by the record as a whole.  (Docket No. 16, at 9.)

The administrative law judge acknowledged allegations of severe

impairments.  These were required to be considered under SSR 96-7p and circuit

case law.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19 (1st Cir.

1986).  The factors to be weighed under the correct standard are the following:

> (i)    Your daily activities;
> (ii)   The location, duration, frequency, and intensity of
>        your pain or other symptoms;
> (iii)  Precipitating and aggravating factors;
> (iv)   The type, dosage, effectiveness, and side effects of
>        any medication you take or have taken to alleviate
>        your pain or other symptoms;
> (v)    Treatment, other than medication, you receive or
>        have received for relief of your pain or other
>        symptoms;
> (vi)   Any measures you use or have used to relieve your
>        pain or other symptoms (e.g.,  lying flat on your
>        back, standing for 15 to 20 minutes every hour,
>        sleeping on a board, etc.); and
> (vii)  Other factors concerning your functional limitations
>        and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); see also SSR 96-7p.

CIVIL 09-2288 (JA)                    11

In considering the Avery factors globally, the administrative law judge noted that the medical evidence of record reflected persistent pain in the neck, numbness of the hands and legs, sadness, tension and forgetfulness but not to the extent as alleged by plaintiff.  In his rationale, the administrative law judge made reference to the absence of disabling frequency and intensity of pain and discomfort, corroborated by the nature of plaintiff's medical and psychiatric treatment.   Notwithstanding her limitations, the administrative law judge determined that plaintiff was not prevented from performing medium work activity which did not involve heavy, dangerous work.  The administrative law judge also noted that there was an absence of a persistently disabling musculoskeletal, neurological and depressive pathology.  The judge also noted that plaintiff took care of her personal needs and had adequate interpersonal relationships. (Docket No. 16, at 12.)  While it would have been preferable for the administrative law judge to enter into greater details as to the Avery factor, I cannot find that a review of the record would find such supporting data lacking.  Generally, a failure to address all of the Avery factors in the rationale of the final decision is cured if the factors are discussed or considered at the administrative hearing.  However, that was not possible here since plaintiff waived her right to such a hearing.  (Tr. at 26.)  The administrative law judge later noted that plaintiff's past job of sewing machine operator was a light job and within her residual functional capacity.  The

CIVIL 09-2288 (JA)                    12

administrative law judge then found that in comparing that residual functional capacity with the physical and mental demands of that type of work, plaintiff was able to perform that work as actually and generally performed.  He thus found her not disabled under the Social Security Act.

It is clear that the administrative law judge was not required to weigh the evidence and then determine that plaintiff was disabled under the Act.  While plaintiff argues that the administrative law judge did not give proper weight to the treating psychiatrist's evaluations and reports, it is well settled that even the opinions of treating physicians are not entitled to greater weight merely because they are treating physicians.  Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Candelario v. Comm'r of Soc. Sec., 547 F. Supp. 2d 92, 100 (D.P.R. 2008.); Delgado-Quiles v. Comm'r of Soc. Sec., 381 F. Supp. 2d 5, 8-9 (D.P.R. 2005); Quintana v. Comm'r of Soc. Sec. , 294 F. Supp. 2d 146, 150 (D.P.R. 2003).  The administrative law judge considered the treating psychiatrist's opinions regarding plaintiff's functional capacity, but in view of the record as a whole, found them not to be persuasive.  Under the circumstances, the administrative law judge was not required to give those opinions controlling weight.  See 20 C.F.R. § 404.1527(d); Berríos-Vélez v. Barnhart, 402 F. Supp. 2d 386, 391 (D.P.R. 2005); Quintana v.

CIVIL 09-2288 (JA)                    13

Comm'r of Soc. Sec., 294 F. Supp. 2d at 150; cf. Sánchez v. Comm'r of Soc. Sec.,
270 F. Supp. 2d 218, 221 (D.P.R. 2003).

I conclude that in general the final decision reflects a reasonable balancing
and weighing of evidence and the making of credibility determinations by the
administrative law judge.  See Gray v. Heckler, 760 F.2d 369, 374 (1st Cir.
1985); Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 12 (1st Cir.
1982); Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.
1981).  The power to resolve conflicts in the evidence lies with the Commissioner,
not the courts.  Id.; see Barrientos v. Sec'y of Health & Human Servs., 820 F.2d
1, 2-3 (1st Cir. 1987).  Even considering the reports of Dr. Pujols, there is
conflicting evidence as to plaintiff's mental residual functional capacity, not to
mention that the administrative law judge determined that Dr. Pujols' findings
were internally inconsistent.  In general, if there is a substantial basis in the
record for an administrative law judge's decision, the court must affirm the
decision, whether or not another conclusion is possible.  See Ortiz v. Sec'y of
Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  However, this does
not end the inquiry, and this does not mean that the administrative law judge has
complied with the substantial evidence rule.

Plaintiff emphasizes that the job of a sewing machine operator requires
working with moving machinery, work which is precluded by her residual

CIVIL 09-2288 (JA)                          14

functional capacity.  Plaintiff dedicates a great part of her brief to this issue.  The Commissioner addresses the matter of moving machinery in a few lines and in a conclusory manner making reference to an equally conclusory statement of the administrative law judge and the judge's reliance on reports of State Agency Vocational Specialists.  (Docket No. 13, at 22.)  The administrative law judge found in finding number five that from a physical standpoint, plaintiff has the residual functional capacity to perform medium work not requiring, among other things, exposure to moving machinery.  The administrative law judge later found that the job of sewing machine operator was a light job within the aforementioned residual functional capacity.  With respect to the exposure to moving machinery, the physical residual functional capacity assessments of Dr. Pedroza and Dr. Marxuach differ but the administrative law judge does not choose between them in making his final determination, or he chooses one for the first finding and the other for the second finding.  The record is not clear.

SSR 82-62 requires that a determination at step four include the description of the physical and mental demands of the past job.  While these might readily be supplied by the testimony of plaintiff or a vocational expert during an administrative hearing, that did not happen due to waiver and the operation of step four.  Plaintiff has given simple explanations as to how she performed her job, sewing leg parts into men's underwear and carrying bundles of dozens of

CIVIL 09-2288 (JA)                          15

parts to the next operator.   Nevertheless, reasons have to be given by the administrative law judge for the basis of a determination and that clear reasoning is absent in the findings.   A reading of the findings is at best confusing in that from a physical standpoint, plaintiff must avoid exposure to moving machinery, something which a sewing machine obviously is (rather than obviously is not.) It is simply not reasonable to proceed from finding five to finding six and not be confused.   Can a person have the physical residual functional capacity to operate a sewing machine but not be capable of being exposed to moving machinery?

Pursuant to 42 U.S.C. § 405(g), the court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the record.   See 42 U.S.C. § 405(g).   In view of the above, I am entering an order to the Commissioner under sentence four to conduct further proceedings in order to comply with the requirements of the substantial evidence rule.   See Richardson v. Perales, 402 U.S. 389, 401 (1971).   These proceedings should include, but need not necessarily be limited to, making additional findings in relation to plaintiff's residual functional capacity and a comparison of the same with the demands of plaintiff's past relevant work.   The Commissioner may find that this has already been accomplished but the confusion as to exposure to moving machinery is apparent in the findings and in the Commissioner's memorandum.   Therefore, the case is remanded to the Commissioner.   The Clerk

CIVIL 09-2288 (JA)                              16

is directed to enter judgment accordingly.  See Santiago-Aybar v. Comm'r of Soc.

Sec., 545 F. Supp. 2d 231, 234 (D.P.R. 2008).

        At San Juan, Puerto Rico, this 1st day of December, 2010.


                                        S/ JUSTO ARENAS
                                Chief United States Magistrate Judge